1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    JOHN B.,

9                          Plaintiff,

10         v.

11   COMMISSIONER OF SOCIAL SECURITY,

12                          Defendant.

CASE NO. C22-5910-BAT

**ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH
PREJUDICE**

13        Plaintiff seeks review of the denial of his applications for Supplemental Security Income

14   and Disability Insurance Benefits. He contends the ALJ erred by (1) misevaluating the medical

15   evidence; (2) misevaluating plaintiff's testimony; and (3) incorrectly assessing residual

16   functional capacity ("RFC"). Dkt. 17. The Court **AFFIRMS** the Commissioner's final decision

17   and **DISMISSES** the case with prejudice.

18                              **BACKGROUND**

19        Plaintiff is currently 57 years old, attended some college, and has worked as a cook,

20   pantry good maker, kitchen helper, and a laborer in stores. Tr. 78, 325, 329, 338, 1471. The

21   current application was filed in August 2011, but he was permitted at the hearing to reopen a

22   denied July 2010 application and, by extension, a denied September 2010 application, because a

23   determination may be reopened within twelve months "for any reason." Tr. 15, 269–74, 275–88,

1492–92; *see* 20 C.F.R. §§ 404.988, 416.1488. This matter was remanded for new hearings in 2015 and 2021. Tr. 806–18, 1560–61. During proceedings, plaintiff amended his application to allege a closed period of disability from **May 1, 2009 through March 1, 2015**. Tr. 721, 1492. His physical limitations stem, however, from a motor vehicle collision in 2002, and an anterior C6–7 fusion in 2003 that left him with pain, along with numbness and tingling in his arms. Tr. 483. Plaintiff returned to substantial gainful activity on March 1, 2015. Tr. 1455–56.

In July 2022, the ALJ held a hearing and issued a decision. Tr. 1452–73, 1489–1520. The ALJ found that plaintiff meets the insured status requirements through June 20, 2025. Tr. 1455. The ALJ determined that plaintiff has the severe impairments of cervical degenerative disc disease with radiculopathy status post C6–7 fusion, generalized anxiety disorder, and dysthymic disorder. Tr. 1456. The ALJ assessed that plaintiff has the RFC to perform light work with additional physical and mental limitations: lifting and carrying 25 pounds occasionally and 20 pounds frequently; carrying 10 pounds occasionally and frequently with the right upper extremity; frequently overhead reaching bilaterally; frequently handling, fingering, and feeling with the right upper extremity; frequently climbing ramps and stairs; never climbing ladders, ropes, or scaffolds, or crawling; frequently working at unprotected heights and with moving mechanical parts; performing simple, routine tasks only; requiring a sit/stand option every 45 minutes for five to ten minutes without being off-task. Tr. 1460. At step four of the sequential evaluation, the ALJ determined that plaintiff is unable to perform any past relevant work. Tr. 1471. At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy, such as document preparer, telephone quotation clerk, election clerk, routing clerk, and collator. Tr. 1472. The ALJ therefore found that plaintiff was not

1    disabled during the closed period from May 1, 2009 through March 1, 2015. Plaintiff allowed the

2    ALJ's decision to become the Commissioner's final decision and appeals it here.  Dkt. 17, at 2.

3                                                    **DISCUSSION**

4            The Court will reverse the ALJ's decision only if it was not supported by substantial

5    evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

6    *Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account

7    of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one

8    rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v.*

9    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Plaintiff has failed to demonstrate that the ALJ's

10   decision was marred by harmful factual or legal error when evaluating (1) the medical evidence;

11   (2) plaintiff's testimony; and (3) RFC.

12           **1.  Medical Evidence**

13           Plaintiff contends that the ALJ failed to properly evaluate the medical evidence by

14   (a) giving significant weight to the opinion of examining physician Dr. Mark Heilbrunn, M.D.,

15   without fully accounting for the opined limitations; (b) giving little weight to the opinion of

16   examining psychologist Dr. Gregory Dorris, Psy.D.; (c) giving great weight to the opinion of

17   examining psychiatrist Dr. James A. Parker, M.D., without including in the RFC assessment that

18   plaintiff was limited to simple and *repetitive* tasks; (d) discounting the opinions of examining

19   psychologist Dr. Terilee Wingate, Ph.D.; (e) discounting the opinion of examining psychologist

20   Dr. Tasmyn Bowes, Psy.D.; (f) generally mishandling the medical evidence that supported the

21   severity of plaintiff's limitations; and (g) discounting the non-examining opinions of

22   psychologists Dr. James Bailey, Ph.D., and Dr. John D. Gilbert, Ph.D., for having relied too

23   heavily on Dr. Wingate's opinion. Dkt. 17, at 3–10. The Court finds that plaintiff has failed to

1    demonstrate that the ALJ's evaluation of the medical evidence was unsupported by substantial

2    evidence or tainted by harmful legal error.

3         As a general rule for claims filed before March 2017, as this one was, more weight

4    should be given to the opinions of treating and examining doctors than to the opinions of doctors

5    who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R.

6    § 404.1527(c)(2); SSR 96-2p. An ALJ may reject the controverted opinions of treating and

7    examining physicians by citing specific and legitimate reasons. *Lester*, 81 F.3d at 830. "An ALJ

8    may reject the opinion of a non-examining physician "be reference to specific evidence in the

9    medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

10        **a.  Examining Physician Dr. Heilbrunn**

11        Plaintiff contends that the ALJ harmfully erred by giving significant weight to the

12   October 2011 opinion of examining physician Dr. Heilbrunn without fully accounting for the

13   opined findings and limitations in the RFC assessment. The Court disagrees because plaintiff

14   offers an alternative interpretation of Dr. Heilbrunn's opinion that does not undermine the

15   reasonableness of the ALJ's decision.

16        In his evaluation, Dr. Heilbrunn noted 4.5 of 5 in right-sided grip strength, 4.5 of 5 in

17   strength of his right upper extremity and atrophy of the right forearm, and decreased sensation at

18   the right arm in the C8, T1, C6, and C7 dermatomes. Tr. 590. In addition to noting that plaintiff

19   would not be able to crawl due to right arm pain, Tr. 588, Dr. Heilbrunn opined the following

20   regarding limitations to his upper extremities:

21        The claimant has manipulative limitations of decreased right arm
         and grip strength and decreased feeling in the right hand and part

22        of the forearm. He is also limited in above-shoulder-level reaching
         with both arms secondary to neck pain. He would be able to

23        function in handling of objects but has some difficulty because of
         decreased sensation and fine-dexterous movements.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 4

Tr. 591. Dr. Heilbrunn opined that plaintiff "has a maximum lifting/carrying capacity of 25 lbs. occasionally and 20 lbs. frequently with the left arm; with the right he is less than 10 lbs. both occasionally and frequently." Tr. 591. The ALJ gave significant weight to Dr. Heilbrunn's opinion as consistent with examination findings and the record, and integrated physical limitations into the RFC assessment on lifting and carrying; overhead reaching; handling, fingering, and feeling; climbing ladders, ropes, or scaffolds, or crawling; and working at heights. Tr. 1460, 1467. The ALJ went beyond Dr. Heilbrunn's recommendations by assessing an RFC that required a sit/stand option, though Dr. Heilbrunn opined "the physical examination findings [show] he would have no limitation in standing." *Compare* Tr. 1460 *with* Tr. 591. There is no indication that the ALJ misevaluated Dr. Heilbrunn's opinion or failed to account for the opined limitations.

Plaintiff concedes that "Dr. Heilbrunn's description of the nature and extent of [plaintiff's] manipulative findings is not completely clear" but nonetheless argues that those findings could be considered consistent with plaintiff's testimony of more severe manipulative limitations on right hand functionality. Dkt. 17, at 4. Similarly, plaintiff argues that Dr. Heilbrunn's finding of decreased strength and sensation in his right arm and right hand might demonstrate that plaintiff should be limited to at most occasional use of his right hand and arm for reaching, handling, fingering, feeling, and grasping. *Id.* The relevant question on appeal is not, however, whether Dr. Heilbrunn's opinion could be interpreted as being supportive of plaintiff's testimony; it is whether the ALJ supported the interpretation with substantial evidence and by applying the correct legal standards. Plaintiff offers an alternative explanation of Dr. Heilbrunn's examination findings that does not undermine the reasonableness of the ALJ's interpretation.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 5

1    The Court finds that plaintiff has not demonstrated that the ALJ's evaluation of Dr.

2    Heilbrunn's opinion and use of it in the RFC assessment was unsupported by substantial

3    evidence or the result of harmful legal error.

4         **b. Examining Psychologist Dr. Dorris**

5         Plaintiff argues that the ALJ discounted the June 2010 opinion of examining psychologist

6    Dr. Dorris by citing an internal consistency that does not exist and without discussing or

7    evaluating Dr. Dorris's findings. Dkt. 17, at 4–5. Although the ALJ rejected Dr. Dorris's opinion

8    rather summarily, plaintiff is unable to demonstrate harmful error because nothing in Dr.

9    Dorris's opinion undermines the reasonableness of the limitations assessed in the RFC.

10        The ALJ discounted Dr. Dorris's recommendation that plaintiff apply for disability

11   benefits because it was internally inconsistent with the doctor's simultaneous recommendation to

12   pursue vocational, training, education, and volunteer options that would increase his

13   employability for jobs with reduced functional demands. Tr. 1469 (citing 473–74). Although

14   plaintiff notes that participation in a vocational training program may not immediately disqualify

15   a person from receiving benefits, *see* 20 C.F.R. § 404.316(c), it was not unreasonable for the ALJ

16   to presume that Dr. Dorris's recommendation about vocational training might be suggesting

17   employability in the unspecified future. Regardless, even if the ALJ was incorrect in presuming

18   the opinion's internal inconsistency, the greater deficiency of the opinion is that Dr. Dorris, in

19   recommending that plaintiff apply for benefits, was referring to a question expressly reserved to

20   the Commissioner without specifying limitations that would suggest disability. Plaintiff is unable

21   to identify any opined limitations not already addressed in the RFC. For example, though

22   plaintiff notes that Dr. Dorris observed that plaintiff was moderately anxious, spoke rapidly, and

23   demonstrated some pressure of speech and tangentiality, Dr. Dorris never opined how such

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 6

1    behavior might affect plaintiff's functionality. Dkt. 17, at 5 (citing Tr. 471). Instead, contrary to

2    plaintiff's contention, Dr. Dorris's opinion can reasonably be read as supportive of the RFC

3    assessment. For example, Dr. Dorris opined that plaintiff had a global assessment of functioning

4    ("GAF") score of 65, which suggests only some mild symptoms or some difficulty in social,

5    occupational, or school functioning, but generally functioning pretty well. Tr. 474; *see* AM.

6    PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV),

7    34 (4th ed. text rev. 1994).

8         The Court finds that plaintiff has not demonstrated that the ALJ harmfully erred as a

9    matter of fact or law by discounting Dr. Dorris's opinion.

10        **c.  Examining Psychiatrist Dr. Parker**

11        Plaintiff contends that although the ALJ gave great weight to the September 2010

12   examining opinion of Dr. Parker, he failed to include in the RFC assessment the restriction to

13   simple and *repetitive* tasks. Plaintiff is correct, but the error is harmless because at step five of

14   the sequential analysis the ALJ referred to several occupations plaintiff can perform that exist in

15   significant numbers in the national economy that are restricted to simple and repetitive tasks.

16        Dr. Parker noted that plaintiff was currently working 16 hours per week as a part-time

17   chef and "is able to do simple and *repetitive* tasks with normal pace and accuracy." Tr. 480

18   (emphasis added). The ALJ gave great weight to Dr. Parker's opinion, Tr. 1469, but determined

19   that plaintiff has the RFC to perform "simple, *routine* tasks only," Tr. 1460 (emphasis added).

20   The Commissioner concedes that the ALJ erred by not including in the RFC the limitation to

21   "repetitive work" but argues that this error was harmless given that occupations named in the

22   step five analysis satisfy this requirement. Dkt. 23, at 11–12. The Commissioner is correct.

23

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 7

1        At step five, the ALJ determined that plaintiff could perform jobs existing in significant

2  numbers that constitute "repetitive work": routing clerk, with approximately 58,950 jobs

3  nationally; and collator, with approximately 16,500 jobs nationally; and both numbers accounted

4  for plaintiff's manipulative and exertional limitations. Tr. 1472 (reducing full number by 50% to

5  account for additional limitations). Plaintiff responds that the jobs of routing clerk and collator

6  do not qualify as *simple* work because they require level 2 reasoning, which is defined as "Apply

7  commonsense understanding to carry out *detailed but uninvolved* written or oral instructions.

8  Deal with problems involving a few concrete variables in or from standardized situations." Dkt.

9  27, at 9 (quoting *Dictionary of Occupational Titles*, Appendix C, available at 1991 WL 688702)

10  (emphasis added). Plaintiff has not, however, addressed the numerous cases within the Ninth

11  Circuit that have held that the ability to perform simple, routine, and repetitive tasks is equivalent

12  to level 2 reasoning. *See Kellina M. v. Commissioner of SSA*, 2023 WL 6239638, at *3 (D. Or.

13  Sept. 26, 2023) (holding that the ability to perform simple, routine, and repetitive tasks is

14  consistent with level 2 reasoning); *Miller v. Kijakazi*, 2021 WL 5768811, at *8 (D. Ariz. Dec. 6,

15  2021) ("[A] limitation to work involving only 'simple tasks,' 'simple, repetitive tasks,' or

16  'simple, routine, repetitive work,' is consistent with the ability to perform Level 2 Jobs.") (citing

17  *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)); *Coleman v. Astrue*, 2011 WL 781930, at

18  *5 (C.D. Cal. Feb. 28, 2011) ("The Court recognizes, as defendant points out, that the weight of

19  prevailing authority precludes a finding of any inconsistency between a reasoning level of two

20  and a mere limitation to simple, repetitive tasks or unskilled work."); *see also Davis v. Saul*, 846

21  F. App'x. 464 (9th Cir. 2021) ("Simple work is consistent with positions requiring Reasoning

22  Level 2."); *Ranstrom v. Colvin*, 622 F. App'x 687, 688 (9th Cir. 2015) ("There is no appreciable

23  difference between the ability to make simple decisions based on 'short, simple instructions' and

the ability to use commonsense understanding to carry out "detailed but uninvolved ... instructions,' which is what Reasoning Level 2 requires."); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) (holding "there was no conflict between the ALJ's step five determination that Abrew could complete only simple tasks and the vocational expert's testimony that Abrew could do jobs that the U.S. Department of Labor categorizes at "Reasoning Level 2"); *Lara v. Astrue*, 305 Fed. App'x. 324, 326 (9th Cir. 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); *cf. Zavalin v. Colvin*, 778 F.3d 842, 846–47 (9th Cir. 2015) (holding that while a residual functional capacity limited to "simple, routine, or repetitive work" may conflict with Reasoning Level 3, it does not appear to conflict with the ability to perform Reasoning Level 2 positions).

The Court finds that the ALJ erred by failing to include in the RFC assessment Dr. Parker's restriction to simple and *repetitive* tasks. This error was, however, harmless because at step five the ALJ set forth occupations existing in significant numbers in the national economy that plaintiff can perform consistent with an RFC restriction to simple and repetitive tasks.

### d.  Examining Psychologist Dr. Wingate

Plaintiff contends that the ALJ improperly discounted the December 2011 and February 2015 opinions of examining psychologist Dr. Wingate. The Court disagrees.

The ALJ gave Dr. Wingate's December 2011 opinion only some weight because (1) the doctor relied heavily on plaintiff's reported symptoms, which were not consistent with the medical and other evidence; (2) the opinion did not specifically describe plaintiff's level of functioning; and (3) it was inconsistent with the doctor's fairly unremarkable mental status examination of plaintiff. Tr. 1470 (citing Tr. 1211–12). These are specific and legitimate reasons

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 9

for discounting Dr. Wingate's December 2011 opinion. First, as discussed *infra*, the ALJ

reasonably discounted plaintiff's symptom testimony. Second, the entirety of Dr. Wingate's

opinion regarding the effect of symptoms on plaintiff's ability to work was:

> Depressed mood impacts his ability to sustain a regular
> daily/weekly work schedule. He has some difficulty handling
> stress. He does get along well with others, but might work best
> away from the public due to anxiety.

Tr. 1211. That is, Dr. Wingate never specified to what extent plaintiff's depressed mood would

impact his work schedule, to what extent stress would impact work capacity, and whether

working away from the public was recommended or simply suggested since, despite anxiety,

plaintiff got along well with others. Third, Dr. Wingate detailed an unquestionably benign mental

status examination of plaintiff. Tr. 1211–12. Moreover, in 2010  plaintiff reported weekly social

activities and participating in them "about the same" as he did before his health difficulties while

handling stress "fairly well" and changes in routine "very well," Tr. 366, 369; and in 2014

plaintiff self-reported that he engaged in social activities daily and handled stress and changes in

routine "well." Tr. 1042, 1044.

The ALJ gave Dr. Wingate's February 2015 opinion only some weight:

> [T]he doctor's concerns about the claimant's ability to attend to
> tasks, handle stress and work with others are clearly cautious as the
> claimant testified, he began looking for work the same month as
> this exam, and actually accepted a skilled position (kitchen
> manager) the following month that only ended because the
> restaurant closed. Furthermore, the claimant found other work
> shortly afterward and had successfully maintained that
> employment. The opined interaction limitations are also
> inconsistent with the claimant's statements. He reported having no
> problem getting along with others (5E). He reported he got along

> with authority figures "very well" (5E). He reported that he was a
> "well liked person" (25E).[1]

Tr. 1470 (citing Tr. 1389–92); *see* Tr. 367–69; 1042–44. In other words, the ALJ found Dr.

Wingate's limitations on plaintiff to be overstated because plaintiff returned to work at a higher-

than-opined functioning capacity only a month later and also personally reported a higher

capacity for social interactions. These reasons for discounting Dr. Wingate's opinion are specific

and legitimate. Plaintiff's arguments to the contrary offer no rebuttal to the ALJ's reasonable

interpretation of Dr. Wingate's opinion. Dkt. 17, at 5–6; Dkt. 27, at 3.

The Court finds that plaintiff has not demonstrated that the ALJ harmfully erred by

discounting Dr. Wingate's opinions.

### e.  Examining Psychologist Dr. Bowes

Plaintiff contends that the ALJ improperly discounted the July 2014 opinion of

examining psychologist Dr. Bowes. The Court disagrees and, regardless, any resulting error was

harmless.

Dr. Bowes opined that plaintiff had moderate limitations in four domains of basic work

activities: understand, remember, and persist in tasks by following detailed instructions;

communicate and perform effectively in a work setting; complete a normal workday and work

week without interruptions from psychologically based symptoms; and maintain appropriate

behavior in a work setting. Tr. 1166. In the other nine domains, plaintiff had "None or Mild"

limitations. Tr. 1166–67. The ALJ gave Dr. Bowes's opinion "some weight because the doctor

examined the claimant and it is generally consistent with the doctor's fairly unremarkable mental

---

[1] The ALJ also noted that plaintiff told Dr. Wingate that he was experiencing panic episodes
every six months but testified at the hearing that he had daily problems with anxiety. Tr. 1470;
*see* .

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 11

1    status examination" but noted that "the opinion does not specifically describe the claimant's

2    level of functioning." Tr. 1470. That is, first, the mental status examination of plaintiff showed

3    that he was within normal limits in appearance, speech, attitude and behavior, mood, affect,

4    thought process and content, orientation, perception, memory, fund of knowledge, concentration,

5    abstract thought, and insight and judgment; and second, Dr. Bowes did not specify how moderate

6    limitations in four domains could be translated into an RFC assessment or workplace restrictions

7    in light of having none/mild restrictions in all other areas. The ALJ cited specific and legitimate

8    reasons for discounting Dr. Bowes's opinion.

9            First, plaintiff's benign mental status examination suggested that Dr. Bowes relied on the

10    administered Beck depression and anxiety inventory scores showing moderate depression and

11    anxiety scores when determining that plaintiff had moderate limitations in four mental domains.

12    Tr. 1164–65. Dr. Bowes stated upfront that "[a]ll information gathered is per client report," Tr.

13    1163, such that, coupled with having reviewed only Dr. Wingate's December 2011 opinion, to

14    the extent plaintiff's symptom testimony and Dr. Wingate's opinion could be reasonably

15    discounted, so too could Dr. Bowes's opinion. Second, it was not unreasonable to infer that by

16    assessing an RFC that limited plaintiff to performing simple, routine tasks only, the ALJ indeed

17    gave "some weight" to Dr. Bowes's opinion and integrated a measure of the opined moderate

18    limitations. Tr. 1166; *see, e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir.

19    2008). For example, Dr. Bowes did not opine that any of those moderate limitations would

20    necessitate a particular number of absences or preclude working with others. Rather, Dr. Bowes

21    opined that plaintiff had none or minor limitations in numerous areas consistent with the RFC

22    limitation to simple, routine work, such as: understanding, remembering, and persisting in tasks

23    by following very short and simple instructions; performing activities within a schedule,

1    maintaining regular attendance, and being punctual without special supervision; learning new

2    tasks; performing routine tasks without special supervision; adapting to changes in a routine

3    work setting; and making simple work-related decisions. Tr. 1166.

4           Thus, even presuming the ALJ erred by giving only some weight to Dr. Bowes's opinion,

5    the error is harmless because the ALJ assessed an RFC that reasonably accommodated the

6    moderate limitations and identified jobs that were consistent with those limitations. By limiting

7    plaintiff to simple, routine work, the ALJ addressed moderate limitations to plaintiff's

8    understanding, concentration, persistence, and pace, such as his ability to understand detailed

9    instructions; communicate and perform effectively in a work setting; and complete a normal

10   workweek without psychological interruption. Tr. 1166. At step five of the sequential evaluation,

11   the ALJ identified the jobs of router clerk and collator operator, occupations that involve

12   significant interaction with things but not with people. Tr. 1472; DOT 222.687-022 (Routing

13   Clerk), *available at* 1991 WL 672133; DOT 208.685-010 (Collator Operator), *available at* 1991

14   WL 671753. Furthermore, Dr. Bowes opined that plaintiff's "difficulty working appears to be

15   primarily related to his physical health rather than his mental health," and, even then, plaintiff

16   would be impaired for under twelve months. Tr. 1167.

17          The Court finds that plaintiff has not demonstrated that the ALJ harmfully erred as a

18   matter of fact or law by discounting Dr. Bowes's opinion.

19                    **f.   Other Medical Evidence**

20          Plaintiff sets forth medical evidence that he contends is supportive of his testimony and

21   the favorable medical evidence. Dkt. 17,  at 7–10. Such "[b]are assertions and lists of fact

22   unaccompanied by analysis and completely devoid of caselaw fall short of the requirement" for

23   appellate review. *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007). This is an accurate

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 13

characterization of plaintiff's discussion of "other medical evidence": plaintiff has recited

medical findings devoid of any meaningful argumentation. Plaintiff has failed to indicate how

the ALJ harmfully erred as a matter of fact or law by considering the other medical evidence and

declining to find that the medical evidence irrefutably supported plaintiff's symptom testimony.

### g.   Non-Examining Opinions

#### i.   Non- Examining Psychologists Drs. Bailey and Gilbert

Plaintiff contends that the ALJ erred by giving only some weight to the 2015 opinions of

non-examining psychologists Drs. Bailey and Gilbert because they relied too heavily on Dr.

Wingate's opinion. Dkt. 17, at 10 (citing Tr. 1469); *see* Tr. 834–36, 848–50, 864–66, 878–80.

The Court finds no harmful error in discounting the opinions of Drs. Bailey and Gilbert because,

as discussed earlier, the ALJ stated specific and legitimate reasons for discounting Dr. Wingate's

opinions.

#### ii.   Non-Examining Physician Dr. Saue

Plaintiff contends that the ALJ erred by giving great weight to the opinion of non-

examining physician Dr. Saue because the doctor improperly "adopted" the ALJ's February

2013 decision, though that decision was not a final decision at that time, as it was still being

appealed, and it was ultimately reversed. Dkt. 17, at 10 (citing Tr. 868, 1467). The Court finds

that plaintiff has not demonstrated that the ALJ committed harmful error by relying on Dr.

Saue's opinion.

Dr. Saue opined that plaintiff could perform light work with additional physical

limitations. In doing so, the doctor explained that the February 2013 ALJ decision, Tr. 15–29,

referring only to physical impairments, was adopted with respect to physical impairments, even

though on reconsideration there were other mental limitations to consider. Tr. 868. The ALJ gave

this decision "great weight because the doctor had the benefit of reviewing the medical evidence and it is consistent with the physical restrictions from the previous decision." Tr. 1467. This was error. In 2015, this Court reversed the ALJ's 2013 opinion because the RFC had failed to account for examining psychiatrist Dr. Parker's opinion that plaintiff was limited to simple and repetitive tasks. Tr. 813–816. The error was harmless because Dr. Saue was not addressing the mental limitation assessed by Dr. Parker to simple and repetitive tasks; the current ALJ's decision integrated Dr. Parker's restriction in the RFC, albeit in the form discussed *supra* as "simple, routine tasks only"; and the current RFC contains physical limitations that are more detailed and restrictive than those contained in the 2013 ALJ decision. *Compare* Tr. 21 *with* Tr. 1460. The ALJ thus did not rely on Dr. Saue's opinion in a manner that undermined the substantial evidence supporting the current decision.

Plaintiff has failed to demonstrate that the ALJ harmfully erred as a matter of fact or law by giving great weight to Dr. Saue's opinion.

### 2.  Plaintiff's Testimony

Plaintiff contends that the ALJ failed to give specific, clear, and convincing reasons for rejecting plaintiff's symptom testimony. Dkt. 10, at 9–14; *see Lambert v. Saul*, 980 F.2d 1266, 1277 (9th Cir. 2020). The Court disagrees.

In the RFC assessment, the ALJ accounted for plaintiff's allegations of debilitating neck pain and difficulties using his arms by restricting plaintiff to light work, except he could lift 25 pounds occasionally and 20 pounds frequently, carry 10 pounds occasionally and frequently with the right upper extremity, and required a sit/stand option every 45 minutes, as well as other manipulative, postural, and environmental limitations. Tr. 1160. The ALJ also considered plaintiff's anxiety and depression and limited him to simple, routine tasks. *Id.* The ALJ stated

several reasons for discounting plaintiff's allegations regarding the severity of his symptoms:

(1) plaintiff's activities were incompatible with his allegations; (2) plaintiff worked during the period at issue; (3) plaintiff returned to work at the end of the period with no evidence that his condition had improved; (4) the objective evidence was inconsistent with his allegations; and (5) plaintiff's treatment history was incompatible with his testimony. Tr. 1462–66. These reasons for discounting plaintiff's symptom allegations were specific, clear and convincing.

First, the record is replete with activities that suggested a greater functionality than plaintiff's allegations of being able to stand and sit for only fifteen minutes at a time; lifting between two and ten pounds and concentrating only for short periods; problems with grasping items; and debilitating pain and severe depression and anxiety. Tr. 1460–61 (citing Tr. 421, 766, 1043, 1055, 1502). Plaintiff played basketball, handball, and rode bikes with friends, Tr. 1211; lifted weights and did pushups for exercise, Tr. 1210; played cards, played dice, and engaged in woodworking, Tr. 367, 766, 1042, 1210; engaged in daily activities such as shopping for groceries, washing the dishes, mowing the lawn, driving, carrying his laundry from his trailer to his parent's house on the property, visiting friends several times a week, and going to church, Tr. 365–67, 423, 1040–42, 1051–52, 1054; and admitted to being able to follow written and spoken instructions well, finish what he started, and handle stress and changes in routine well, Tr. 368–69, 1043–44. In September 2010, an examining physician noted that plaintiff "did not appear to have any limitations in his activities of daily living as a result of his neck pan." Tr. 1463 (citing Tr. 483). In October 2011, plaintiff admitted that he was not limited in walking or sitting and that he could stand for one hour uninterrupted. Tr. 1463 (citing Tr. 587). Moreover, examining psychologist Dr. Enid Griffin, Psy.D., noted that plaintiff liked "to spend time outdoors hiking,"

1    engaged in woodwork, could take care of his daily living activities without any issues, and

2    socialized frequently. Tr. 595–96.

3            Second, plaintiff worked during the period at issue in a manner that suggested he was less

4    debilitated than he alleged. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may

5    consider any work activity, including part-time work, in determining whether a claimant is

6    disabled . . . ."). In addition, an ALJ may reject a claimant's testimony when the claimant

7    stopped working for non-disability stated reasons. *See, e.g.*, *Bruton v. Massanari*, 268 F.3d 824,

8    828 (9th Cir. 2001) (affirming the ALJ's decision to discount pain testimony because, among

9    other reasons, claimant stated that he left his job because he was laid off, rather than because he

10   was injured). From July 2009 to June 2010, plaintiff worked as a chef for 30 hours a week. Tr.

11   322, 594. In July 2010, plaintiff worked 10 hours a week at a catering company but stopped six

12   months later due to "lack of work." Tr. 322, 594. From May 2010 to September 2010, plaintiff

13   worked as a chef for 20 to 25 hours a week. Tr. 390. From October 2010 to January 2011,

14   plaintiff worked as a laborer for 35 to 40 hours a week, lifting 50 pounds, and was let go from

15   job due to allegations of stealing. Tr. 594, 607, 757.

16           Third, although plaintiff alleges a closed period of disability from May 1, 2009, through

17   March 1, 2015, the ALJ found that the record "does not show significant improvement in [his]

18   condition that led to his return to work." Tr. 1466. It is undisputed that plaintiff returned to

19   substantial gainful activity as a kitchen manager in March 2015. Tr. 758, 1010–12, 1079, 1097.

20   Plaintiff testified that his anxiety was "the same" now that he was working as it was before he

21   returned to work, and that his ability to lift with his right hand was "the same" as it was before he

22   returned to work. Tr. 761, 764. It was therefore reasonable for the ALJ to find that a return to

23   full-time work with no indication that his symptoms had actually improved was a reason to

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 17

1    discount plaintiff's symptom testimony. *See, e.g.*, *Guerrero v. Colvin*, 2017 WL 1520016, at *8

2    (S.D. Cal. Apr. 26, 2017); *Plotts v. Astrue*, 2009 WL 507486, at *4 (D. Or. Feb. 26, 2009). The

3    Court rejects plaintiff's unsubstantiated argument that "the record shows gradual improvement

4    which led to [plaintiff] being able to return to full-time work in March 2015." Dkt. 17, at 14.

5              Fourth, the ALJ reasonably determined that the objective medical evidence was

6    inconsistent with the severity of plaintiff's symptom allegations. Such medical evidence included

7    generally benign physical and mental-status examinations. Tr. 479–80, 483–86, 526, 534, 584,

8    595–96, 599, 642, 646, 648, 655, 1167–68, 1212, 1323, 1370–71, 1373, 1391, 1415, 1786.

9              Fifth, the ALJ reasonably discounted plaintiff's system testimony due to its inconsistency

10   with his treatment history. The ALJ cited "minimal mental health treatment" during the period at

11   issue consisting of psychotherapy and the periodic use of medications that were "effective" and

12   worked "fairly well" to reduce his symptoms. Tr. 1465 (citing Tr. 594–95); *see* Tr. 1164, 1338,

13   1390). Similarly, the ALJ noted minimal treatment for plaintiff's neck condition in 2014 and

14   early 2015, while much of his treatment in 2014 focused on low back pain that resolved after a

15   few months. Tr. 1465 (citing Tr. 760); *see* Tr. 1310–83, 1412–18. Similarly, 2011 physical

16   therapy records indicated that plaintiff was "doing better" overall. Tr. 1464 (citing Tr. 568).

17             Plaintiff has not demonstrated that the ALJ harmfully erred as a matter of fact or law by

18   discounting his testimony about the severity of his symptoms.

19   **3.   RFC**

20             Plaintiff contends that the ALJ assessed a harmfully erroneous RFC by misevaluating the

21   medical evidence and his symptom testimony. The Court has rejected plaintiff's allegations

22   regarding the ALJ's evaluation of the medical evidence and plaintiff's symptom testimony and

23   therefore rejects plaintiff's claim of a harmfully erroneous RFC.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 18

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is

**DISMISSED** with prejudice.

DATED this 17th day of October, 2023.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE MATTER WITH PREJUDICE - 19